RODNEY S. DIGGS, ESQ. (SBN 274459)
Email: rdiggs@imwlaw.com
**IVIE, McNEILL & WYATT**
444 South Flower Street, Suite 1800
Los Angeles, California 90071
Telephone: (213) 489-0028
Facsimile: (213) 489-0552
*Attorneys for Plaintiffs*

BRIAN T. DUNN, ESQ. (SBN 176502)
Email: bdunn@cochranfirm.com
JAMES A. BRYANT, ESQ. (SBN 255652)
Email: jbryant@cochranfirm.com
MEGAN R. GYONGYOS, ESQ. (SBN 285476)
Email: mgyongyos@cochranfirm.com
**THE COCHRAN FIRM CALIFORNIA**
4929 Wilshire Boulevard, Suite 1010
Los Angeles, California 90010-3856
Telephone: (323) 435-8205
Facsimile: (323) 282-5280
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF SINUON SAMANTHA PREAM, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LONG BEACH, a municipal entity, et al. <br><br> Defendants. | **CASE NO.: 17-cv-04295-TJH (FFMx)** <br><br> [Assigned to the Hon. Terry J. Hatter, United States District Judge] <br><br> **DECLARATION OF CAROL A. SOBEL AND EXHIBITS 1-7 IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES PURSUANT TO 42 U.S.C. § 1988** |

## DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1. I am an attorney admitted to practice before the Supreme Court of the State of California and this Court. I make this declaration from facts of which I have personal knowledge and, if called to testify to those facts, I could and would do so competently.

2. I graduated from law school in 1978 and was admitted to practice in December 1978. I entered private practice in April 1997, specializing in civil rights and civil liberties. Prior to that time, I was employed at the ACLU Foundation of Southern California. My current practice involves civil rights litigation, focusing primarily on the rights of homeless individuals, First Amendment rights and police practices. I have received several awards for my legal work over the years. A listing of the recognition of my work is set forth in my attached resumé at Exhibit 1.

3. For six years prior to 1997, I was a Senior Staff Counsel at the ACLU. During this time, I was responsible for preparing many of the fee motions for the ACLU. Because the ACLU does not bill clients on an hourly basis for its services, I needed to obtain information to establish reasonable market rates for the ACLU lawyers. It was my practice to get current billing rates for lawyers of comparable skill and experience at several firms throughout the City. I did this each year, contacting partners who were familiar with the ACLU lawyers in question so that they could make an informed judgment about the comparable skill levels of the attorneys at their firms whose rates were used to establish ACLU billing rates. At the time that I consulted these individuals, I was aware they were personally involved in pro bono litigation with the ACLU. Since they worked directly with the lawyers for whom I sought to set market billing rates, they could assess skill and experience of the ACLU lawyers based on personal knowledge.

4. Since entering private practice, I have continued a similar approach each year to obtain relevant comparisons for billing rates. As part of my survey, I make it a point to obtain information concerning rates for attorneys in both larger law firms engaged in complex litigation, as well as smaller boutique civil rights law firms.

1

Based on the information I have obtained from each of these firms, I have formed the opinion that civil rights lawyers and public interest lawyers at smaller or solo civil rights firms have rates significantly below those of comparably skilled and experienced attorneys at larger business firms that occasionally do pro bono civil rights and civil liberties work. In my experience, the rates sought by civil rights attorneys are at least 10 to 20 percent lower than the rates of comparable attorneys in private firms that do complex federal litigation, even when large firms co-counsel with the public interest lawyers.

5. In addition to speaking with partners at various law firms, I also obtain information on market rates charged by attorneys in the Los Angeles area by reviewing attorney fee applications and awards in other cases. Specifically, I regularly review fee applications submitted by, and court awards made to, MALDEF, ACLU, Disability Rights Legal Center ("DRLC"), Western Center on Law and Poverty, Public Counsel and other non-profit legal organizations in Los Angeles to determine the rates sought and awarded as market rates for lawyers from these public interest firms, as well as the rates for their pro bono counsel from large commercial firms. I also review fee awards to, and fee applications by, private civil rights lawyers. Finally, I frequently obtain fee applications and resulting awards from public records for the federal and state courts when I become aware of a case where I believe statutory fees were sought.

6. I have presented at CLEs on attorney fees, including trainings for attorneys at the Legal Aid Foundation of Los Angeles, the ACLU Foundation of Southern California, the National Police Accountability Project and the National Lawyers Guild.

7. My declarations in support of fee applications have been cited by courts as evidence of reasonable market rates in Los Angeles on multiple times. For example, in *Nadarajah v. Holder*, 569 F.3d 906, 912-914 (9th Cir. 2009), the Ninth Circuit repeatedly cited to my declaration in support of the application of attorneys from the ACLU for fees under the Equal Access to Justice Act ("EAJA"). Some of the other cases in which my declarations have been cited favorably include *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074, *21 (C.D. CA

2008), granting fees pursuant to the federal IDEA statute, 20 U.S.C. §1415(i)(3)(c) to the same attorneys as in this fee motion, *Orantes-Hernandez v. Holder*, 713 F.Supp.2d 929, 963–964 (C.D.Cal. 2010); *Atkins v. Miller*, CV-01-01574 DDP (C.D.Cal 2007); *Jochimsen v. County of Los Angeles*, B223518 (2d Dist. June 23, 2011) (unpublished); *Dugan v. County of Los Angeles*, cv 11-08145 CAS (C.D. Cal. Mar. 3, 2014); *Charlebois v. Angels Baseball LP*, SACV 10-0853 DOC (May 30, 2012); *Hiken v. DOD*, 2013 U.S. Dist. LEXIS 118165 (N.D. Cal. Jan. 14, 2013), *Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Cal. 2011); *Rauda v. City of Los Angeles*, 2010 U.S. Dist. LEXIS 138837 (C.D. Cal. 2010); *Flores v. City of Westminster*, SA-CV-11- 0278 DOC (C.D. Cal. Oct. 23, 2014); *Carrillo v. Schneider Logistics*, Case: 12-55042 (9th Cir. 2014); *Wagafe v. Trump*, Case 2:17-cv-00094-RAJ [Doc. 223] (W.D. WA 02/27/19) and *Webb v. Officer J. Ackerman*, 13-cv-01992 PLA (C.D. Cal. January 4, 2018) [Doc. 180, p.5]. In *Jochimsen*, the appellate panel held that I was qualified as an expert to opine on market rates.

8. To analyze market rates, I apply several principles. First, when available, I look to rates awarded to the same attorneys in prior cases as strong evidence of reasonable market rates. *See Hiken*, 836 F.3d 1040. Next, I look to billing rates by attorneys engaged in similarly complex litigation as an approved method of setting market rates for civil rights attorneys who do not bill clients on an hourly basis. This approach recognizes that most civil rights attorneys, including at non-profits, take cases on a contingency basis and are not paid hourly for their services. I believe that this approach is directed by, and consistent with, the order of the U.S. Supreme Court in *Blum v. Stenson*, 465 U.S. 886 (1984). I understand that this principle applies whether an individual is "represented by private or nonprofit counsel.'" *Van Skive v. Dir., Office of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009), quoting *Blum v. Stenson*, 465 U.S. 886, 895.(1984) "[T[he proper scope of comparison...extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (internal quotes omitted). See also, *Blum*, 465 U.S. 895 n.11.

9. One means of obtaining this information that I utilize is review of

declarations filed in support of fee motions. I understand that declarations filed in support of fee motions are relevant evidence because "[a]ttorney affidavits regarding prevailing fees in the community and rate determinations in other cases" may also provide "satisfactory evidence of the prevailing market rate." *Perfect 10, Inc. v. Giganews, Inc.*, 2015 U.S. Dist. LEXIS 54063, *14-15, Case No. CV 11-07098-AB (Shx) (C.D. CA Mar. 24, 2015), citing, *inter alia*, *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.1990) (same).

10. When the specific rate evidence identified in the preceding paragraphs is available, I do not rely on surveys because they do not meet the standards for the lodestar analysis. In my experience, fee surveys report market rates in sweeping categories with no identification of the comparable skill, experience and reputation of the attorneys included in the survey and often no indication of the relevant legal market. Similarly, I do not apply the rates billed by and paid to opposing counsel who are salaried, contract government attorneys, or retained insurance defense because they generally charge rates well below market and are paid win or lose, so they do not share the risk taken by lawyers who depend upon fee-shifting statutes and other contingent fees. *See e.g., Chabner v United of Omaha Life Ins. Co.*, No. C-95–0447 MHP) 1999 US Dist. Lexis 16552, *16 n2 (ND Cal, Oct. 12, 1999) (insurance defense law firm rates inapplicable to public interest attorneys representing plaintiffs), aff'd, 225 F3d 1042 (9th Cir 2000); *Van Asdale v International Game, Tech.*, No. 3:04-cv-00703-RAM) 2011 US Dist Lexis 56715, *10 (D Nev, May 24, 2011) (because government lawyers and retained insurance defense attorneys generally bill at lower rates, they do not reflect the same legal market).

11. I also apply the principle that "the proper scope of comparison...extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter." *Prison Legal News*, 608 F.3d at 455 (internal quotes omitted). *See also, Blum*, 465 U.S. 895 n.11.

12. I was asked to provide an opinion on the reasonableness of the rates sought in this action. Plaintiff's counsel provided me with information about the case and the results at trial. I understand the requested rates are for attorneys at the Los Angeles

4

office of The Cochran Firm and of-counsel Constance Rice. The table below lists the attorneys, their years of graduation, amount of experience in 2019 and requested rates.

| Brian Dunn | Cochran | 1993 | 26 | $850 |
| Constance Rice | Cochran | 1984 | 35 | $890 |
| James Bryant | Cochran | 2007 | 12 | $650 |
| Megan Gyongyos | Cochran | 2012 | 7 | $495 |

13. I am familiar with several of the attorneys involved in this case. Constance Rice and I worked together over the past 30 years. We co-counseled case the *Tipton-Whittingham* class action against the Los Angeles Police Department. More recently, I participated in the Rampart Blue Ribbon Panel, chaired by Ms. Rice. In my opinion, Ms. Rice is nationally recognized as an exceptionally skilled and experienced attorney, particularly on issues relating to police practices in communities of color. I know Mr. Dunn as well, although less well. Based on my own involvement with police practices issues in Los Angeles for approximately 30 years, I am of the opinion that he is highly skilled and experienced and enjoys a reputation as such. I do not know the other attorneys personally; however, I spoke with James Bryant and reviewed his declaration. For Ms. Gyongyos, I spoke with Brian Dunn while preparing this declaration. Three years ago, I provided a supporting declaration in a police misconduct case involving Mr. Dunn and Ms. Gyongyos, along with John Fattahi, co-counsel in the case with The Cochran firm. At the time, Mr. Fattahi provided me with his opinion of Ms. Gyongyos's skill and experience. I know Mr. Fattahi for approximately 13 years and consider him to be highly skilled based on reading briefs that he prepared and participating in moot courts for him. In my experience, he is a good judge of the skill and experience of other attorneys.

14. To support my opinion on the reasonableness of the requested rates, I refer to fee awards and supporting declarations in several recent civil rights cases applying rates for counsel of comparable skill and experience in the Los Angeles legal market. Each is a true and correct copy of the document as it appears in the official court records and bears the filing stamp or ECF header of the relevant court. In some instances, as noted in my declaration, I applied the legal services component in the increase in the

cost of living for Los Angeles to extrapolate current value from the prior rate. The rate is published at http://www.bis.gov/news.release/cpi.102.htm (Table 2. Consumer Price Index for All Urban Consumers (CPI-U): U.S. city average, by detailed expenditure category). This percentage is the Los Angeles cost of living increase for legal services. In *Hiken v. DOD*, the Ninth Circuit cautioned that a rate that is more than two *years* old is not a current rate. 836 F.3d at 1040.

15. Attached at Exhibit 2 is the Declaration of Charles Barquist filed in support of the motion for attorney fees in *Housing Works, et al. v. County of Los Angeles, et al.*, No. 2:15-cv-08982 GW (RAOx) [Doc 144-11]. Mr. Barquist attested to the 2018 customary billing rates for attorneys at Morrison & Foerster, the firm Ms. Rice was an associate at following her Sixth Circuit clerkship. Mr. Barquist attested to the 2016 rate of $950 an hour for Sean Gates, a 1996 law graduate. Ex. 2 ¶¶ 15-16. Both Mr. Dunn and Ms. Rice have more experience than Mr. Gates had in 2016.

16. Mr. Barquist also attested to the rate of $875 an hour for Ryan Malloy, identified as a 2007 law graduate. Ex. 2 ¶¶ 17-18. In 2018, Mr. Malloy had the same amount of experience as Mr. Bryant does now. Mr. Malloy's rate is almost 30 percent above the rate Mr. Bryant requests. Mr. Dunn has 15 years additional experience and Ms. Rice 26 more years experience than Mr. Malloy. Ms. Rice's requested rate is barely 1 percent above Mr. Malloy's 2018 rate and Mr. Dunn's rate is approximately three percent below Mr. Malloy's 2018 rate.

17. Two 2015 law graduates at MoFo were billed at $550 an hour for 2018, more than 10 percent above the rate requested for Megan Gyongyos with four additional years of experience. Ex. 2 ¶¶ 19-22.

18. Attached at Exhibit 3 is the order approving attorney fees in *Rodriguez v. County of Los Angeles*, 96 F.Supp 3d 1012 (C.D. CA 2014) CASE NO. 10-6342-CBM (AJWx). *Rodriguez* was an excessive force case arising in the County jail. I provided a supporting declaration in the matter. The Court approved the 2014 rate of $775 an hour for Ronald Kaye, then with 26 years of experience, the same amount of time Mr. Dunn has now. .Applying the COLA factor for legal services, the equivalent rate now would be approximately $900 an hour, slightly more than five percent above

6

the rate of $850 an hour Mr. Dunn seeks.

19. In *Rodriguez*, the Court also approved the 2014 rate of $600 an hour for Kevin LaHue, listed as a 2004 law graduate, and $500 an hour for Caitlin Weisberg, identified as a 2008 law graduate. Ex. 2: 96 F.Supp 3d at 1022. In 2014, Mr. LaHue had two years less experience than Mr. Bryant has now. Applying the COLA, the equivalent rate to Mr. LaHue's 2014 rate would now be approximately $700 an hour, not including the two additional years of experience Mr. Bryant has. Similarly, the 2019 equivalent rate for Megan Gyongyos to Caitlin Weisberg's 2014 rate of $500 an hour would be $582 an hour, almost $100 above the rate Ms. Gyongyos seeks, not including the additional year of experience Ms. Gyongyos has.

20. Attached at Exhibit 4 is the Declaration of Anna Rivera in support of the motion for attorney fees in *Garcia v. Los Angeles*. 2:09-cv-08943 DMG-SH [Doc 443] (C.D. CA 2017). I provided a supporting declaration in *Garcia*. Based on discussions with Ms. Rivera, I understand that the parties settled the fees after the motion was filed. The 2017 rates sought included $875 an hour for Paula Pearlman, the former Executive Director of the Disability Rights Legal Center ("DRLC") in Los Angeles. Ex. 4, ¶ 25. She is identified as a 1982 law graduate. Ex. 4, ¶¶ 21-23. In support of the 2017 rates, Ms. Garcia attested to historical rates awarded to Ms. Pearlman, including $800 in 2014 an hour. *Id.*, ¶ 24. In 2017, Ms. Pearlman had the same amount of experience that Ms. Rice has now. The $15 an hour difference in their rates represents an increase of less than one percent a year on the base rate for an attorney with 35 years of experience.

21. Ms. Rice's requested rate of $890 an hour is reasonable when compared to the 2017 rate of $850 an hour approved for Anne Richardson, then with six years less experience than Ms. Rice has now. Ex. 4, ¶ 9. Ms. Rice's rate is also reasonable when compared to the 2017 rate of $875 an hour for Paula Pearlman, with the same amount of experience as Ms. Rice has now. Ex. 4, ¶ 25. The $15 increase reflects less than a two percent increase in the base rate over two years. Ms. Rice's rate is also reasonable when compared to the 2016 rate of $1100 an hour for Mssrs. Kiesel and Boucher, then with one and two years less experience than Ms. Rice has now. Ex. 5. Finally, in Exhibit 3, the Court approved $775 an hour for attorney Ronald Kaye, listed as a 1988

7

law graduate, then with 26 years of experience. Applying a modest legal component cost-of-living increase of 3.1 %, would bring Mr. Kaye's 2014 rate to just under $900 an hour. With nine additional years of experience, Ms. Rice's requested 2019 rate of $890 an hour is slightly under the adjusted 2014 rate approved for Mr. Kaye.

22. Mr. Dunn's requested rate of $850 an hour is comparable to the 2017 rate of $745 for Shawna Parks, a 1999 law graduate. Ex. 4, ¶¶ 26,30. Mr. Dunn has 8 more years of experience than Ms. Parks had in 2017. Applying the CPI increase of 3.1 percent to Ms. Parks' 2017 rate of $745, the current equivalent rate for an attorney with 18 years experience would be $792 an hour. With Mr. Dunn's additional six years of experience, the $60 difference is a very small increase of $10 an hour per year.

23. Also in *Garcia*, Ms. Rivera attested to the 2017 rate of $625 an hour for Carly Munson, identified as a 2006 law graduate. Ex. 4, ¶¶ 44-45. In 2017, Ms. Munson had the same amount of experience Mr. Bryant has now. The $25 difference in their rates represents a modest annual increase in the base rate equal to the 3.1 percent legal services component in the CPI. As one more comparison with the DRLC rates, in the 2017 fee application, DRLC applied $525 an hour for Elliott Field, identified in the declaration as a 2009 law graduate. In 2017, Mr. Field had one more year of experience than Ms. Gyongyos does now.

24. Attached at Exhibit 5 is the Declaration of Gerald Knapton filed in *Skeen v. BMW North America*, 2016 U.S. Dist. LEXIS 97188, Civ. No. 2:13-cv-1531-WHW-CLW (D.C. NJ 2016), a class-action product defect case in which Paul Keisel and Ray Boucher were counsel, both well-known class action attorneys in Los Angeles. In *Skeen*, Mr. Kiesel sought a 2016 rate of $1100 an hour and Mr. Boucher, identified in the Knapton declaration as a 1984 law graduate, requested $925 for the early part of the litigation and $1100 for work done in 2016. Mr. Knapton attested that the rates for Mssrs. Kiesel and Boucher were reasonable in the Los Angeles market and consistent with past rates approved for both. Ex. 5, ¶¶ 32,34.

25. To support the rates requested by Mssrs. Kiesel and Boucher in *Skeen*, Mr. Knapton prepared a chart of comparative rates, starting with the 2015 Real Rate Report by Ty-Metrix. He based his calculation on the "high-cut" base third-quartile rate of

8

$848 an hour for partners with more than 21 years of experience in Los Angeles and then applied an upward adjustment to account for higher rates charged in contingent fee cases, ultimately arriving at approximately $1100 an hour for both Mr. Keisel and Mr. Boucher. Ex. 5, p.15. Mr. Knapton explained this was not a multiplier but, rather, a recognition of the practice of attorneys to use a higher rate in contingent cases in view of the risk of non-payment. *Id.* at ¶¶ 42-48. The 2015 Real Rate Report relied on by Mr. Knapton is attached as Exhibit 7 to his declaration.

26. Based on my review of the decision in *Skeen*, I understand that the Court found the Los Angeles rates higher than the New Jersey rates and used the unadjusted 2015 Real Rate Report of $848 for partners with 21 years of experience. The Court did, however, arrive at the same rate of $1100 an hour by applying a multiplier for contingent risk that was the same percentage as the calculation suggested by Mr. Knapton. 2016 U.S. Dist. LEXIS 97188, *71-72 and n.6. Ms. Rice had Mr. Dunn have 14 and 5 more years of experience than the 21 years factored to set the $848 an hour in the 2015 Real Rate Report for partners in the third quartile.

27. Attached at Exhibit 6 is the 2017 order in *International Refugee Assistance Project, et al. v. John F. Kelly, et al.,* Case No. 2:17-cv-1761-JLS-AFMx (C.D. CA 2017), approving fees for Talia Inlender, a 2007 law graduate and an attorney at Public Counsel, at $585 an hour. I provided a supporting declaration in support of the fee motion. At the time, Ms. Inlender had 10 years of experience. With two additional years of experience and two additional billing years, Mr. Bryant's requested rate of $650 is slightly more than 10 percent higher, which averages out to an annual increase of 2.5 percent, Ex. 6, p. 17. Mr. Bryant's rate is also reasonable when compared to the the 2014 rate of $600 an hour approved for Kevin LaHue, with 10 years of experience at the time, and the 2018 rate of $600 an hour approved for Josh Adams, a 2008 law graduate. Ex. 3, p. 12; Ex. 7, p. 7.

28. Attached at Exhibit 7 is a true and correct copy of the tentative order awarding fees to Josh Adams at Bush Gottlieb. I provided a supporting declaration in support of the fee motion. Mr. Adams provided me with a copy of the order and informed me that, at the hearing on the motion on March 19, 2019, the Court adopted

9

the tentative as the final order. The approved 2018 rate for Josh Adams, a 2008 law graduate, was $600 an hour. Ex.7 , p. 7. I know his year of graduation based on my review of the declaration he filed in support of the motion for fees. With two years more experience, Mr. Bryant requests a rate $50 above the 2018 rate approved for Mr. Adams, which averages out to an increase of approximately 4 percent a year.

29. The chart below summarizes the information in the preceding paragraphs.

| Ex. | Attorney | Firm | Award | Experience | Rate |
|---|---|---|---|---|---|
| 2 | Ryan Malloy | MoFo | 2018 | 11 | $875 |
| 2 | Sean Gates | MoFo | 2016 | 20 | $950 |
| 2 | Herberto Alvarez | MoFo | 2018 | 3 | $550 |
| 3 | Ron Kaye | KMBL | 2014 | 26 | $775 |
| 3 | Kevin LaHue | KMBL | 2014 | 10 | $600 |
| 3 | Caitlin Weisberg | KMBL | 2014 | 6 | $500 |
| 4 | Paula Pearlman | DRLC | 2017 | 35 | $875 |
| 4 | Shawna Parks | DRLC | 2017 | 18 | $745 |
| 4 | Carly Munson | DRLC | 2017 | 11 | $625 |
| 4 | Elliot Fields | DRLC | 2017 | 8 | $525 |
| 5 | Paul Kiesel | Kiesel Law | 2016 | 31 | $1100 |
| 5 | Ray Boucher | Kiesel Law | 2016 | 32 | $1100 |
| 6 | Talia Inlender | Pub. Counsel | 2017 | 10 | $585 |
| 7 | Josh Adams | Bush Gottlieb | 2018 | 10 | $600 |

30. Based on the foregoing, my opinion is that the rates are reasonable in the Los Angeles legal market for attorneys of comparable skill, experience and reputation.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 15th day of April, 2019 at Santa Monica, California.

*Carol A. Sobel*

CAROL A. SOBEL